The next case this morning is 522-0483, Keeple v. Antoine Alexander. Arguing for the defendant appellant is Joseph Binnock. Arguing for the state appellee is Adam Rodriguez. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, Your Honors. Good morning, Judge. Is it Binnock or Beignet? Binnock. Binnock. Didn't get it right on two tries. It's all right. All right, Mr. Binnock, would you like to proceed? Yes, Your Honor. You may do so. Good morning, Your Honors. I intend to first address Alexander's argument that he was denied the right to put on a defense. And then, time permitting, I'd also like to address the Frankel issue as well. Antoine Alexander was denied the right to put on a complete defense because his attorney was ineffective, and the trial court erroneously imposed the extreme sanction of barring Alexander from testifying that he and S.B., a woman with whom he had been romantically involved for several months, had a sexual encounter on the night in question. Defense counsel failed to disclose consent before trial and then declined to object to the state's motion to bar Alexander from claiming consent. Counsel's actions were objectively unreasonable. Counsel should have known that consent would be an issue in a case involving two romantically involved individuals who, by S.B.'s own admission, had previously had consensual sex. Moreover, even if counsel did not anticipate consent being an issue, there was no strategic benefit to foregoing a consent defense before trial had even started. After all, Alexander had two defenses to the charge of criminal sexual assault. The first is that he did not commit an act of sexual penetration, and the second is that he did commit an act of penetration, but it was consensual, meaning no force was involved. Counsel's failure to disclose consent before trial essentially took that latter defense off the table for Alexander. Counsel then compounded his error by eliciting testimony from Alexander, establishing that an act of sexual penetration did, in fact, occur. Counsel asked Alexander whether he and S.B. went into the bedroom together and then asked what happened when they were there. Alexander responded that he and S.B. did what we normally do, what adults normally do, what normal adults do. The state objected, noting the court's pretrial ruling barring Alexander from testifying to consent, and then defense counsel was essentially forced to move on without further developing this part of Alexander's testimony whatsoever. So, in sum, looking at it in total here, counsel inexplicably decided not to raise a consent defense when there was no strategic benefit to doing so, and then elicited testimony from Alexander, establishing that an act of sexual penetration had, in fact, occurred. In other words, counsel essentially conceded both of the elements the state was required to prove. Mr. Bennett, what about the defense where no sex ever occurred? How does that relate to consent? If you take the position that it never happened, then consent is irrelevant. Correct, Your Honor. Yes, the defense that no act of sexual penetration occurred. But if you look at Alexander's testimony when he's saying, you know, we went into the bedroom, we did what adults normally do, he is saying that an act of sexual penetration occurred. But the trial court specifically asked defense counsel about that, and defense counsel said, we're not saying that anything occurred. Correct, Your Honor. I mean, how do you get around what defense counsel said? Well, because clearly the state and the court both interpreted what Alexander was saying as him trying to testify to a consent defense, trying to present his version of events, which is that they had a consensual sexual encounter. The state and the court both read his comments that way. The defense didn't clarify it. Defense counsel then did say that what he was, I think that defense counsel's representation that he was not going into the area of consent was disingenuous based on what Alexander had testified to. What defense counsel went on to say was that, you know, no battery, what he was trying to establish was that no battery occurred. But whether a battery occurred would really just speak to whether the sex was consensual. So I think even taking counsel at his word, the record shows that, you know, Alexander was trying to get into the very defense that defense counsel had elected to forego before trial. So even though, yes, defense counsel did say, you know, hey, I'm not going into consent, I think that was more a realization that, you know, he had erred here by foregoing consent. And then Alexander, you know, gets on the stand as, you know, and exercises his constitutional right to present his version of what happened. And then defense counsel has to sort of backtrack and say, well, no, actually, I wasn't trying to go into consent because, again, he had already foregone that defense. And so that is, you know, as far as defense counsel is concerned, his actions were unreasonable. And they deprived Alexander of the right to put on a complete defense because Alexander could not testify that he and SB had consensual sex, which, you know, again, as shown by his reference to what happened in the bedroom, that was Alexander's version of events about what happened on the night in question. He couldn't get up and say no sexual penetration occurred at all if that's not true, you know, obviously without perjuring himself. However, even with counsel's failures, it did not have to be this way. The court was not required to impose the extreme sanction of barring Alexander from raising consent. Prohibiting a criminal defendant from presenting testimony or evidence as a discovery sanction is a disfavored sanction because it does not further the goal of truth seeking. Moreover, the state does not claim that it would have been prejudiced in any way by allowing Alexander to testify that he and SB had consensual sex. I mean, nor could the state really make this claim given that it questioned SB in its case in chief about whether the sex was consensual and thereby putting consent directly at issue. So, it was fundamentally unfair for the court to allow the state to raise the issue of consent and then deprive Alexander from responding in any way. The court should have simply declined to impose that sanction. I want to ask you about a different issue, and that is related to the stipulation as to Dr. Cuneo's report. Yes, your honor. People versus Cook says that that type of stipulation is error. Correct, your honor. It is. The issue in this case, though, is that the because there was no court reporter for. For early for pretrial proceedings, it's not really possible to say whether the court actually found a bona fide doubt as to Alexander's as the state pointed out in its brief, whether the court actually found a bona fide doubt as to Alexander's fitness. And so that is for the reason that's why, in the reply brief, we did not address that issue because the finding of the bona fide doubt is sort of a prerequisite to to. Before that, unless that happens, the stipulation can't really come into play was my reading. Are you abandoning that issue on appeal? Yes, your honor. Okay, that's what I wanted to make sure. Okay, thank you. To return to the argument about the right to put on a complete defense. The court can review this as second prong prong plane air. Alexander had a fundamental right to a fair opportunity to present a defense. Here, Alexander was denied that right because he could not testify about the critical event in question, which is what happened when he and went into the bedroom together. What happened there is what this case is really all about. And when I say that Alexander could not testify about what happened in the bedroom, I'm talking about two things. First, Alexander could not say that no sexual penetration occurred again without perjuring himself, because it's clear based on his testimony that that's what he believed happened that that was his version of events. And second, since Alexander could not testify that the penetration was consensual, in effect, could not testify about what happened in the bedroom. That whole area of his testimony is sort of a black box. And then again, and that's the most critical part of this whole case. However, even if this court does not find second prong plane air, it can still reverse Alexander's convictions. Counsel's failure to disclose consent before trial was prejudicial. And it was also first prong plane air in a case that came down to really a credibility contest. You know, there was the bent earring and the ripped underwear, but Alexander presented his own version of those pieces of evidence. And, you know, while the court ultimately found S.B. more credible, that's really not surprising, given that Alexander was not allowed to present his side of the story. It's impossible to say whether the court would have reached the same credibility conclusion had it been presented with both versions of events rather than just one. So for all of these reasons, this court, Alexander respectfully asked this court to reverse his conviction for criminal sexual assault and remand for a new trial. It seems I'm just about out of time, so I will make further points in rebuttal. Thank you, Your Honor. Thank you, Mr. Bennett. Mr. Rodriguez for the state. Yes, Your Honor. Thank you. Good morning and may it please the court. Defendant has not only forfeited any review concerning a certain consent defense, but he's also invited the alleged error by affirmatively disavowing that he the attempted testimony and evidence he sought to present at trial was even relevant to a consent defense. And as such, the trial court didn't abuse its discretion in excluding the evidence. As the defendant seems to argue today, and as it's clear, he both forfeited and invited the error that he complains of non appeal. Defendant never advanced a consent defense in trial. Justice Capes, I think your question cuts directly to that point. Defendant at trial advanced two arguments. One that there was a lack of any corroboration, evidentiary medical or documentary evidence corroborating the victim's assertion of a sexual assault and that there was no contact whatsoever. And so it's incongruent for defendant to argue that at trial, he presented a defense that there was no contact whatsoever. Not that there was sexual contact. And I think defendant misstates the record in regards to this point. SB testified at 105 and 106 of the record. There was never any sexual contact whatsoever. No contact, no sexual contact. So it is not correct to say that defendants sought to present an argument that they engage in a consensual sexual activity. In fact, he presented just the opposite testimony. At 147 of the record, defendant denied multiple times that he threw SB on the bed. And later at 150, 153 and 155 of the record, defendant rejected or explicitly stated he denied touching her at all. So you cannot now on appeal argue that defendant wanted to present a consent defense in which there was a sexual, consensual encounter that occurred. But at trial, defendant himself reject any contact whatsoever. So contrary to defendant's claim on appeal, he told this story and had an opportunity to advance his argument, but it had nothing to do with consent. And that issue is underscored by counsel statements. Following the state's objection to defense testimony regarding what occurred in the bedroom and that the defendant and victim did, quote, what normal adults do, defense counsel made three, I think, critical representations. One, he indicated at 145 of the record that he didn't know what defendant was saying. Two, defense counsel explicitly told the trial court that his questioning was not intended to raise a consent defense. And that was at 146 of the record. And three, counsel said his question was intended to establish that no physical contact or battery occurred whatsoever, quote, that would give rise to any of the charges, end quote. And that's also at 146 of the record. So contrary to defendant's arguments today, most certainly he did present a defense both through his counsel and through his own testimony on direct. But that testimony and that argument in defense was squarely about no physical contact occurred whatsoever. It's not correct to say that defendant wanted to present an argument that they had a conceptual sexual encounter. In fact, he presented the exact opposite and contradictory claim. So given that testimony, I think defendant's argument on presenting a consent defense and the inability to isn't supported by the record. Furthermore, your honors, defendant's not entitled to plain air review in this situation. Under the first prong of plain air, the evidence wasn't closely balanced and indeed corroborated the victim's testimony regarding defendant's use of force. I think defendant takes a different tact in how the evidence is presented, but it most certainly supported the victim's testimony. I'll just note for the court that Officer Kelly, who's the initial officer who arrived on the scene, testified that SB immediately identified the defendant as her attacker. And stated, quote, he threw me around the apartment, tore my clothes off, and put his hands beside me. That's at R26 and 27 of the record. SB testified that during the incident, defendant grabbed her, threw her on the ground, causing one of her ears to become bent and to fall off. That testimony is corroborated by Detective Zimmerman's testimony and the photograph depicting the bent earring on the floor of SB's living room. And that's at R62 and 63 of the record and pages 9 and 10 of the evidence. SB testified the defendant took her old cell phone away from her when she tried to call 911. That testimony was corroborated by the photos of SB's broken old phone on the floor of her bedroom. That's at R93 of the record and page 31 of the evidence. SB testified the defendant took her phone from her before throwing her on the bed. The reasonable inference there is that the defendant grabbed her through the phone and ended up on the floor of her bedroom. And in this situation, analyzing the evidence, the light most favorable to the state, that's the reasonable inference. And it supports the testimony regarding defendant's use of force during the assault. Furthermore, SB testified that after throwing her on the bed, defendant ripped off her underwear and placed his fingers in her vagina. That testimony was corroborated both by Detective Zimmerman's testimony and photographs showing the ripped underwear located near the bedroom. I would also note that in one of the photos, they're visible at pages 11 and 14 of the evidence, the bed appears to be made, but the sheets and comforter appear to be tussled or disturbed, corroborating SB's testimony that defendant threw her on the bed, she was bleeding with him, and that she subsequently got off. So contrary to defendant's assertions now that there was a consensual sexual encounter, it appears that there was some activity in the bedroom based on the location of the underwear and based on the manner of the bed. It appears and is consistent with SB's testimony that defendant assaulted her, but she was able to leave the room and subsequently went into the living room area where defendant prevented her from leaving her apartment. And finally, SB's DNA was identified on defendant's hands. So the forensic evidence as well supports the inference that when defendant placed his hands on her vagina, SB's DNA transferred onto his hands. Additionally, defendant's claim of ineffective assistance of counsel fails. Defendant can't satisfy the prejudice brought under Strickland. While the trial court didn't admit the letter into evidence, it nonetheless allowed defense counsel to cross SB about the meaning behind her statements. That's at 120 and 21 of the record. Moreover, defendant wasn't prejudiced by counsel's failure to assert a consent defense where no evidence was presented at trial sufficient to assert that defense. As I argued previously and consistent with People v. Guja, defendant never presented a consent defense argument. He presented a completely different argument on a lack of any contact whatsoever and a lack of evidentiary or forensic corroboration of the victim's assertions of a sexual assault. That defense is directly contradicted in asserting a consent defense, which is why counsel never presented it. Moreover, defendant can't satisfy the deficient performance problem in Strickland. As generally, matters of trial strategy are immune of claims of ineffective assistance. Counsel advanced a completely different theory, so it makes sense that he wouldn't present a consent defense. And the failure to assert a winning defense is not itself evidence of deficient performance. I think counsel, and this was a point that was brought up earlier, regarding defense counsel's failure to assert consent defense when the people file two motions and eliminate. I think that actually speaks to the intentionality of counsel at trial. Under Supreme Court Rule 413D, defense counsel is the only one who can assert a consent defense, and he has an affirmative duty under Rule 14D to represent and to give notice to the state that he's going to file or present an affirmative defense at trial. So based on the initial filing of the state's first motion to eliminate on March 26 of 2021, defendant was on notice at that point that if he intended to present a consent defense, it was his requirement under Rule 413D to give the state that affirmative notice. He chose not to do that, which again is consistent with his ultimate trial. And then that sort of affirmative choice is again underscored at the second motion to eliminate that's filed by the state, where again the state specifically seeks to bar any reference to affirmative defenses, this time specifically referencing consent. And again, that motion is granted without objection. So it's clear that from the very beginning of trial, through trial, through defense counsel's closing arguments and the evidence that was presented, that he always intended to present the defense of a lack of physical contact and lack of corroboration, not a consent defense. Your Honor, I'd like to very briefly touch on the second claim. Defendant's unspecified conspiratorial accusations do not amount to a culpable claim of ineffective assistance of counsel. Contrary to the defendant's claim, his generalized complaints made during the statement and allocution were not sufficient to trigger the trial court to engage in preliminary criminal inquiry. I think based on the record at 207 to 213, that's about seven pages of the defendant's statement and allocution, he engages in a wide ranging harangue against the trial court. He casts religiously toned dispersions. He accuses counsel, the state, and the judge of engaging in a vast conspiracy to find people guilty. He makes an isolated reference to the letters, but even in the context of those statements, it's clear defendant's merely asserting and underscoring his belief that he was wrongly persecuted and that he was innocent of these crimes. That is entirely separate from raising a legitimate claim of ineffective assistance of counsel. This court is required to look at those statements holistically and in context and not merely in isolation, the defendant argues. I would assert, including that the bare reference to letters in no way amounted to a legitimate claim and defendant's argument on that point fails. Thank you, Mr. Rodriguez. Mr. Benek, rebuttal? Your honors, the state says that Alexander did not present any evidence that would support a consent defense. I think there's a very simple reason for that and it's that he was barred from doing so. It's the whole nature of his claim on appeal is that he was not allowed to present his version of events. So for the state to turn around and then say, well, he didn't present any consent defense. I mean, that's really the whole issue here. So I think that argument misses the mark. As far as that... I mean, it put his attorney on notice and that is why I think the record bears out his attorney's ineffectiveness. Because again, whether his attorney, the state is correct, his attorney did have strategic control and obviously he exercised that control to give up on a defense before trial had even started. But Alexander had a right to testify and he had a right to present his own version of events and his attorney's failures deprived him of that right. And for that reason, his attorney was ineffective. In regard to the matter of strategy, I mean, the state saying, well, it's clear that this whole strategy was to show that no active sexual penetration occurred. If that was counsel's strategy, he utterly failed in that respect because he elicited testimony from Alexander that an active sexual penetration did occur. The state says that there's no way to read that... I'm misrepresenting the record when I say that Alexander was trying to establish that an active sexual penetration did occur. But the state has not ever offered a plausible reading of what Alexander meant when he said they went into the bedroom and they did what adults do, what they normally do, what adults normally do. The state has never offered another plausible reading other than he was trying to say that they had a consensual sexual encounter. Or that they had a sexual encounter. And obviously, the state and the court at trial both interpreted it as him saying that there was an active sexual penetration. As far as stuff happens with the police involved, Alexander taking the cell phone, I don't think that there's any dispute here that there was an argument, that there was a fight of some kind. But none of that really bears on the crucial issue of what happened when they were in the bedroom together. Which again, Alexander was denied the right, denied his ability to testify to. The state says that the council's strategy to show that no battery occurred or no contact occurred would be inconsistent with the consent defense. But I don't really see how that would be the case if you're arguing that no battery occurred, you're arguing that what occurred was consensual. So there's really no contradiction there whatsoever. As far as the Krenkel issue is concerned, the state really downplays, I think, the clarity of what Alexander was saying. The state says that this is a conspiratorial rambling statement. It's a reference to something that specifically happened at trial. Defense counsel tried to impeach SBE with two letters that she had written to Alexander when he was in jail. And the state objected because counsel had not disclosed those letters until the morning of trial. And then counsel, this is kind of a pattern on counsel's part, of failing to disclose things. He initially tried to claim that he had only learned about the letters a few days before, but then he talked with Alexander and his staff. So then at sentencing, Alexander, the record shows he specifically turned and specifically addressed defense counsel. And he stated, you sit here to represent me and not say anything. You had those letters when I came over here in February the 18th. I mean, so it's clear that counsel had built his trial strategy around impeaching and cross-examining SBE with these letters and then had not taken the steps of disclosing to the state. And again, this is part of a pattern on defense counsel's part. So this is a reference to a specific failure on trial counsel's part. It's supported by the record. There's nothing conspiratorial about it whatsoever. The court needed to conduct an inquiry and it failed to do so. It just moved on entirely. In fact, its only response was to chastise Alexander and respectfully request that this court reverse his conviction for criminal sexual assault or in the alternative, remand for a preliminary criminal inquiry. Thank you, your honors. Thank you both for your arguments here today. This matter will be taken under advisement and we will issue an order in due course.